IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 2:18-cr-182 |
| Plaintiff, | : | |
| | : | CHIEF JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Elizabeth P. Deavers |
| JEROME WATKINS, JR. | : | |
| | : | |
| Defendant. | : | |

### OPINION & ORDER

### I. INTRODUCTION

This matter comes before the Court on Defendant Jerome Watkins' Motions for Compassionate Release. (ECF Nos. 171, 173, 174, 175, 176, 177, 181). The Government opposes release. (ECF Nos. 178, 179, 182). This Court previously held Mr. Watkins' Motion for Compassionate Release in Abeyance to permit counsel to provide a supplemental motion on the § 3553 factors. (ECF No. 180). Both parties filed supplemental motions as a result. (ECF Nos. 181, 182). For the following reasons, the Court **DENIES WITHOUT PREJUDICE** Mr. Watkins' Motion for Compassionate Release, (ECF Nos. 171, 173, 174, 175, 176, 177, 181).

### I. BACKGROUND

On August 30, 2018, a grand jury returned a one-count indictment charging Mr. Watkins and three others with Conspiracy to Illegally Transfer Firearms in violation of 18 U.S.C. § 371. The Government alleged that Mr. Watkins was the leader of the conspiracy. On September 27, 2019, the Court sentenced Mr. Watkins to a below-guidelines term of imprisonment of 36 months and a 3-year term of supervised release. He was ordered to report to the United States Marshal's Service to begin his term of imprisonment on November 25, 2019. (*See* ECF No. 141 at 445.)

On June 22, 2020, Mr. Watkins submitted an administrative request for compassionate release or home confinement due to the COVID-19 pandemic. On July 7, 2020, Mr. Watkins filed a pro se motion asking the Court to place him on home confinement. (ECF No. 165). On August 3, 2020, the Court denied the motion, given Mr. Watkins' failure to exhaust his administrative remedies. (ECF No. 167). The Warden denied the request on June 24, 2020. On September 25, 2020, Mr. Watkins filed a second motion for compassionate release. (ECF No. 171.) Mr. Watkins argued that he had properly exhausted his administrative remedies. (ECF No. 171 at 1). In addition, Mr. Watkins reported that he suffers from asthma, a medical vulnerability that poses an added danger to his health if he contracted the COVID-19 virus, i.e., asthma. The Government argued that even if Mr. Watkins has exhausted administrative remedies, that he has nevertheless failed to establish "extraordinary and compelling reasons" justifying his release. (ECF No. 178).

On December 1, 2020, the Court held Mr. Watkins' Second Motion for Compassionate Release in abeyance to allow the parties to file a supplemental motion on the § 3553 factors. This Court instructed the parties to focus on whether Mr. Watkins would pose a danger to the community upon release. In this Court's December 1 Opinion & Order, it determined that Mr. Watkins has exhausted his administrative remedies, thereby fulfilling the claim-processing rule under 18 U.S.C. § 3582(c)(1)(A), *see also United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). (ECF No. 180). In addition, the Court also answered in the affirmative the question of whether Mr. Watkins demonstrated "extraordinary and compelling reasons" for release under 18 U.S.C. 3582(c)(1)(A), based upon his mild asthma diagnosis. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020). On December 8, Mr. Watkins filed a Supplemental Motion to his Motion for Compassionate Release. (ECF No. 181). He resubmitted the foregoing comments on his health concerns and expanded on his personal and family background. The Government

responded in opposition. (ECF No. 182). Thus, the only remaining question for adjudication is whether Mr. Watkins meets the § 3553(a) factors.

## II. LAW & ANALYSIS

As an initial matter, this Court recognizes the devastating impact of the COVID-19 pandemic and that prison populations are subject to heightened vulnerability. The spread of COVID-19 in prisons has been well documented. Upon this Court's December 1 Order, Lewisburg USP, where Mr. Watkins is confined, had 86 *recovered* cases among inmates and 14 *recovered* cases among staff, with only 4 cases among staff and *none* among the inmate population. (ECF No. 180 at 5, n.1). Now, however, this number has skyrocketed with 54 inmates and 31 staff currently sick with COVID-19; 116 inmates and 19 staff members have recovered.[1]

Thus, as this Court held and still holds, Mr. Watkins' asthma diagnosis places him at an increased risk of severe illness or death if afflicted with COVID-19, and this constitutes "extraordinary and compelling reasons" within the meaning of the First Step Act. This Court clarifies, however, that the CDC does not categorize asthma as an underlying medical condition that is *known* to place adults at an increased risk of severe illness from the virus. Rather, the CDC explains that those with moderate-to-severe asthma "*might* be at an increased risk from a severe illness from the virus that causes COVID-19."[2]

### A. Section 3553 Sentencing Factors Analysis

While Mr. Watkins has demonstrated "extraordinary and compelling reasons" which could justify a reduction in sentence, this Court must also consider "all relevant § 3553(a) factors before

---

[1] BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus, last access 1/7/2020 at 4:30 p.m.
[2] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last access 1/8/2020 (5:00 p.m.) (emphasis added).

3

rendering a compassionate release decision." *Jones*, 2020 WL 6817488, at *11. A court does not need to "specifically articulat[e]" every single § 3553(a) factor in its analysis; instead, the record "as a whole" must indicate that the pertinent factors were taken into account by the court. *Id.* Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

In his Supplemental Motion, Mr. Watkins explains he has demonstrated meaningful steps toward rehabilitation while incarcerated and that he does not an extensive criminal history. (ECF Nos. 171, 181). Prior to his incarceration, Mr. Watkins obtained and maintained gainful employment. (ECF No. 181 at 4). As to whether his release would pose a danger to the community, Mr. Watkins relies upon his lack of criminal history, commitment to counseling to address his emotional well-being and substance-abuse concerns, and low "Male Pattern Risk" and "Violent" scores. (*Id.* at 6).

On the other hand, Mr. Watkins' Supplemental Motion acknowledges that he would benefit from continued counseling and self-examination. (*Id.* at 4 ("Though Mr. Watkins could not explain to the Court at his sentencing hearing why he chose criminal conduct as a solution to his losing his job . . . he may be better equipped to answer that question with continued counseling and self-examination."). And the Supplemental Motion's discussion of why Mr. Watkins would not pose a danger to the community upon release is fairly bare-bones.

The Government's Supplemental Response in Opposition to Mr. Watkins' motion argues that the § 3553(a) factors weigh strongly against releasing Mr. Watkins or altering his sentence. First, the Government contends that continued incarceration is appropriate given that Mr. Watkins has been able to take meaningful steps toward rehabilitation, and thus fears that early release would

4

stall that progress. Further, the Government emphasizes that the nature of Mr. Watkins' underlying offense—Conspiracy to Illegally Transfer Firearms—is a violent and dangerous offense. It argues that the Defense's characterization of the underlying offense as "victimless" is specious since the firearms involved in the conspiracy were used in two separate criminal instances. Mr. Watkins is also only a third of the way through his three-year sentence. The Government posits that an early release would negate the deterrence value of his below-Guidelines sentence, which would compromise the safety of the community. The Government also contends that early release would cut off the progress Mr. Watkins has made in addressing his substance abuse.

Here, the Court must contemplate both the health risks to Mr. Watkins and the interests served by continued incarceration. The nature of the underlying offense, even if distinguishable from crimes more traditionally classified as violent, is a troubling and serious offense that facilitated the violent crimes of others. To be clear, the Court is not indifferent to Mr. Watkins' asthma diagnosis or the complications that may arise from his exposure to COVID-19. But prior to releasing a defendant from federal custody pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court must be convinced that the defendant is not a danger to the safety of any other person or the community. *See* U.S.S.G. § 1B1.13. Given the nature of the underlying offense to Conspiracy to Illegally Transfer Firearms, the Court is not confident that Mr. Watkins' early release would pose no danger to the community. Accordingly, Mr. Watkins' Motion for Compassionate Release is **DENIED WITHOUT PREJUDICE**.

### III. CONCLUSION

For these reasons, the Court **DENIES WITHOUT PREHUDICE** Mr. Watkins' Motion for Compassionate Release. (ECF Nos. 171, 173, 174, 175, 176, 177, 181).

**IT IS SO ORDERED.**

                                                **ALGENON L. MARBLEY**
                                                **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: January 25, 2021**